UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MARIO PATRICIO <br> CHILIQUINGA YUMBILLO, <br> <br> Petitioner, <br> <br> v. <br> <br> DERRICK STAMPER, <br> *Chief Patrol Agent, Houlton Sector,* <br> *U.S. Customs & Border Protection*, et al. <br> <br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    2:25-cv-00479-SDN <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

### I.     Background

Petitioner Mario Patricio Chiliquinga Yumbillo is an Ecuadorian citizen who entered the United States without inspection in June 2023. *See* ECF No. 1 at 1. On September 18, 2025, at 8:03 p.m., Mr. Chiliquinga Yumbillo filed a petition for a writ of habeas corpus with this Court under 28 U.S.C. § 2241. ECF No. 1.

According to Mr. Chiliquinga Yumbillo's verified petition, his counsel believes he currently is detained and in the custody of U.S. Customs and Border Protection ("CBP") within the State of Maine.[1] ECF No. 1 at 2. His counsel has not been able to contact him since September 10, 2025, and it is unclear where he is being held beyond the fact that he is in CBP custody within the State of Maine and therefore this District. ECF No. 1-7 at 2.

---

[1] Because Mr. Chiliquinga Yumbillo asserts and presumably is detained in Maine, I find that this Court retains jurisdiction over the habeas matter. *See Ozturk v. Trump*, 777 F. Supp. 3d 26, 35 (D. Mass. 2025) ("[A]s a general matter, a habeas petitioner must file his or her petition in the district of confinement."). And although 8 U.S.C. § 1252(b)(9) limits judicial review in immigration proceedings, it "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quotation modified).

1

CBP first detained Mr. Chiliquinga Yumbillo on January 13, 2025, pursuant to 8 U.S.C. § 1226(a). *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); ECF No. 1-2 at 2. That same day, CBP issued a Notice of Custody Determination that released Petitioner on his own recognizance. ECF No. 1-4 at 2. On January 14, 2025, the Department of Homeland Security ("DHS") initiated removal proceedings against him. ECF No. 1-5 at 2.

On May 20, 2025, DHS—for reasons not evident in the record—terminated the removal proceedings against Petitioner. ECF No. 1-6 at 2–3. Then, on September 10, 2025, CBP detained Petitioner again in Portland, Maine, and remanded him into CBP custody. ECF No. 1 at 2.

In his habeas petition, Mr. Chiliquinga Yumbillo argues that he is entitled to a bond re-determination hearing pursuant to 8 U.S.C. § 1226(a) because he was previously released under that statutory provision on an order of recognizance. ECF No. 1 at 4. He urges this Court to issue a writ of habeas corpus directing the Government to provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a). ECF No. 1 at 7. In the alternative, he asks that this Court conduct its own bail hearing pursuant to its inherent authority. ECF No. 1 at 7 (citing *Gomes v. U.S. Dep't of Homeland Sec., Acting Sec.*, 460 F. Supp. 3d 132, 144 (D.N.H. 2020)).

In addition to his verified petition, Mr. Chiliquinga Yumbillo filed a motion for a temporary restraining order to prevent his transfer outside the District of Maine while the matter is pending. ECF No. 3. I construe his motion as asserting that he is detained unlawfully under 8 U.S.C. § 1225, which deprives him of the opportunity to be heard on the issue of release while his removal proceedings are pending, *see* ECF No. 3 at 2–4;

8 U.S.C. § 1225(b)(2)(A) (establishing mandatory detention for noncitizens detained in the country who have not been admitted or paroled), and that he instead is entitled to a bond re-determination hearing pursuant to 8 U.S.C. § 1226(a), *see* ECF No. 3 at 2. If true, mandatory detention without a bond hearing would violate his Fifth Amendment rights to due process. ECF No. 3 at 2–3. He urges the Court to enjoin the Government from transferring him outside the jurisdiction while it considers the merits of his habeas petition. ECF No. 3 at 3.

## II.   Discussion

In determining whether to grant a motion for a temporary restraining order, I must consider the following four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 282 (D. Me. 2020) (alteration in original) (quoting *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006)). The movant bears the burden of showing the factors weigh in their favor. *Esso*, 445 F.3d at 18. "If the moving party cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

### A. Likelihood of Success on the Merits

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, and applies to noncitizens in immigration proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993). Mr. Chiliquinga Yumbillo argues that he is being deprived of his due process protections

3

under the Fifth Amendment because he is unable to seek a bond hearing to which he is entitled under section 1226(a).

Under 8 U.S.C. § 1225(b)(2), a noncitizen "who is an applicant for admission"[2] shall be detained for a removal proceeding "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). In contrast, under 8 U.S.C. § 1226, a noncitizen is entitled to procedural protections that are not afforded under the expedited removal statute. *See* 8 C.F.R. § 236.1 (2025) (enumerating the procedural protections). "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the [noncitizen] under the original warrant, and detain the [noncitizen]." 8 U.S.C. § 1226(b). However, "ICE's decision to re-detain a noncitizen like [Mr. Chiliquinga Yumbillo] who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2) (2025)).[3]

As such, I must determine whether Mr. Chiliquinga Yumbillo is likely to succeed in his claim that section 1226(a)—which entitles him to a bond hearing—rather than section 1225(b)—which requires mandatory detention—applies. The majority of district

---

[2] An "applicant for admission" is defined as "[a] [noncitizen] present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including a[] [noncitizen] who is brought to the United States after having been interdicted in international or United States waters) . . . ."

[3] 8 C.F.R. § 241.13 states, "The Service may revoke a[] [noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."

courts across the country and within this Circuit have determined that when a noncitizen has resided in the interior of the United States continuously for more than two years, section 1226(a) applies to their detention status.[4] *See, e.g.*, *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-00326, ECF No. 16 (D.N.H. Sept. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *R&R adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Francisco T. v. Bondi*, No. 25-CV-03219, 2025 WL 2629839 (D. Minn. Aug. 29, 2025); *Maldonado v. Olson*, No. 25-CV-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Diaz Diaz v. Mattivelo*, No. 1:25-CV-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Rodrigues De Oliveira v. Joyce*, No. 2:25-CV-00291, 2025 WL 1826118 (D. Me. July 2, 2025). These courts' well-reasoned decisions indicate to me that Mr. Chiliquinga Yumbillo is likely to succeed in his claim that section 1226(a) applies.

---

[4] Mr. Chiliquinga Yumbillo entered the country in June 2023, and removal proceedings commenced against him in January 2025. ECF No. 1 at 1. The proceedings were then fully terminated on May 20, 2025, and he was re-detained in September 2025. ECF No. 1 at 2. 8 U.S.C. § 1225(b)(1) provides for expedited removal of noncitizens who, inter alia, "ha[ve] *not* affirmatively shown, to the satisfaction of an immigration officer, that the [noncitizens have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(iii)(II) (emphasis added). I presume for the purposes of this order that section 1225(b)(1) does not apply and that he has resided continuously in the country for more than two years.

5

The likelihood of success on his claim is bolstered by the fact that Mr. Chiliquinga Yumbillo was previously considered to be subject to section 1226(a), as evidenced by his original Notice of Custody Determination. *See* ECF No. 1-4. Generally, in weighing whether section 1226(a) applies, one relevant factor is whether the Government has previously treated the petitioner as being subject to section 1226(a). *E.g.*, *Martinez*, 2025 WL 2084238, at *3 ("Respondents' contrary theory [that section 1225(b)(2) applies rather than section 1226(a)] cannot make sense of Petitioner's release on recognizance because individuals detained following examination under section 1225 can only be paroled into the United States for urgent humanitarian reasons or significant public benefit [which do not apply to the petitioner]." (quotation modified)).

Because I determine that section 1226(a) likely applies, I also find it is likely Petitioner's due process rights were violated when he was re-arrested and held without a bond hearing. It is undisputed that noncitizens have a liberty interest in their freedom. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). "To protect that interest, due process requires notice and a hearing, prior to any re-arrest, at which hearing the individual is afforded the opportunity to advance their arguments as to why their release should not be revoked." *Rosado*, 2025 WL 2337099, at *12. The record indicates that Mr. Chiliquinga Yumbillo did not have a hearing before he was re-detained in September 2025. Thus, it is likely that he has been denied the process that he was due, which in this case would be an opportunity to be heard at a bond re-determination hearing while his removal proceedings are ongoing.

Based on the claims in his verified petition, I conclude that Mr. Chiliquinga Yumbillo has a likelihood of success on his Fifth Amendment claim.

### B. Potential for Irreparable Harm

Mr. Chiliquinga Yumbillo provides multiple reasons why a transfer outside of the District of Maine would cause him irreparable harm. He asserts subjecting him to expedited removal would deprive him of his due process rights by depriving him of his access to the Immigration Court and would enable Respondents to send him anywhere in the world without a hearing, and that transfer outside of the District of Maine could strip this Court of jurisdiction and inhibit Mr. Chiliquinga Yumbillo's right to access counsel. ECF No. 3 at 2–3. I conclude that absent a temporary restraining order, Mr. Chiliquinga Yumbillo is at risk of facing irreparable harm.

### C. Balance of the Equities and Public Interest

"A plaintiff seeking a preliminary injunction must establish that . . . the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The crux of the balance of equities inquiry is whether 'the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Grant v. Trial Ct.*, No. CV 25-10770, 2025 WL 1570807, at *10 (D. Mass. May 28, 2025) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

It is evident that Mr. Chiliquinga Yumbillo faces a risk of deprivation of his rights if he is foreclosed from having a bond hearing. The harm to the Government is less pronounced. Although the Government has a legitimate interest in the "prompt execution of removal orders," *Hernandez-Lara v. Lyons*, 10 F.4th 19, 32 (1st Cir. 2021), "[t]here is no discernable harm that will come to Respondents by granting Petitioner's requested

relief, nor would this Court's ruling interfere with ICE's proper enforcement of U.S. immigration laws," *Francisco T.*, 2025 WL 2629839, at *4. Rather, "such unnecessary detention imposes substantial societal costs." *Hernandez-Lara*, 10 F.4th at 33.

The equities here weigh in favor of granting Mr. Chiliquinga Yumbillo an opportunity for his habeas petition to be heard on the merits.

### III.   Bond Requirement

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper." Fed. R. Civ. P. 65(c). The decision to issue a bond is left up to the district court's discretion. *See Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991). Accordingly, I **ORDER** Mr. Chiliquinga Yumbillo to post a $100 bond within forty-eight hours of the issuance of this order. *See* Order on Motion for Temporary Restraining Order, *Chogllo Chafla v. Scott et al.*, No. 25-cv-00437 (D. Me. Sept. 2, 2025), ECF No. 10 at 5.

### IV.   Conclusion

I hereby **ORDER** that the Respondents in this matter are **ENJOINED** from removing Mr. Chiliquinga Yumbillo from the District of Maine pending further order from this Court. Mr. Chiliquinga Yumbillo's motion for a temporary restraining order is **GRANTED**. ECF No. 3.

**SO ORDERED.**

Dated this 19th day of September, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

8