UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |  | |
|---|---|---|---|
| MARIO PATRICIO CHILIQUINGA YUMBILLO, | ) ) ) | | |
| Petitioner, | ) ) ) | | |
| v. | ) ) | 2:25-cv-00479-SDN | |
| DERRICK STAMPER, *Chief Patrol Agent, Houlton Sector, U.S. Customs & Border Protection*, et al. | ) ) ) ) ) | | |
| Respondents. | ) | | |

## **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Mario Patricio Chiliquinga Yumbillo is an Ecuadorian citizen who entered the United States without inspection in December 2022. ECF No. 24 at 2 n.2. In January 2025, he was detained by U.S. Customs & Border Protection ("CBP") and released the same day on his own recognizance. ECF No. 1 at 1–2. CBP re-detained him on September 10, 2025. *Id.* On September 18, 2025, Mr. Chiliquinga Yumbillo filed with this Court a verified petition for a writ of habeas corpus challenging his detention without a bond re-determination hearing. ECF No. 1. The Government responded in opposition on September 24, 2025, ECF No. 21, and Mr. Chiliquinga Yumbillo replied two days later, ECF No. 24. On September 29, 2025, the Court held a hearing on the merits of Mr. Chiliquinga Yumbillo's petition. For the following reasons, I GRANT Mr. Chiliquinga Yumbillo's petition for a writ of habeas corpus.

1

## I. Background

### A. Facts[1]

Mr. Chiliquinga Yumbillo is from Ecuador and entered the United States without inspection in December 2022. ECF No. 24 at 2 n.2. CBP first detained Mr. Chiliquinga Yumbillo on January 13, 2025, pursuant to its authority under 8 U.S.C. § 1226(a).[2] ECF No. 1-2 at 2. That same day, CBP issued a Notice of Custody Determination releasing Mr. Chiliquinga Yumbillo into the United States on his own recognizance. ECF No. 1-4 at 2. The following day, the Department of Homeland Security ("DHS") initiated removal proceedings against him by issuing a Notice to Appear. ECF No. 3-2 at 2–3. For reasons that are unclear in the record, an Immigration Judge terminated the removal proceedings on May 20, 2025. ECF No. 1-6 at 2–3.

On September 10, 2025, a Waterville, Maine, police officer responded to a vehicle accident involving Mr. Chiliquinga Yumbillo. ECF No. 21-1 at 3. Finding that Mr. Chiliquinga Yumbillo lacked identification and was not fluent in English, the officer contacted CBP to request an agency record check regarding his immigration status. *Id*. The results revealed that Mr. Chiliquinga Yumbillo did "not [have] legal status to be in the [United States] nor [did he have] any pending proceedings with any immigration courts or petitions." *Id*. The Waterville police brought the Petitioner to the Franklin

---

[1] These facts are derived from Mr. Chiliquinga Yumbillo's verified petition, the parties' filings and exhibits, and counsels' presentations at the September 29, 2025, oral argument.

[2] Under section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes during the pendency of their removal proceedings: the Attorney General "may continue to detain the arrested [noncitizen]"; the Attorney General "may release the [noncitizen] on bond of at least $1,500"; or the Attorney General "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). Section 1226(a) therefore "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, No. 1:25-CV-11571, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025). The only exception to section 1226's discretionary detention regime is that the Attorney General "shall take into custody" any noncitizen involved in certain enumerated criminal activities, none of which are at issue here. 8 U.S.C. § 1226(c)(1).

2

County Sheriff's Office while awaiting CBP's arrival. *Id.* Later that night, CBP placed Mr. Chiliquinga Yumbillo in its custody. ECF No. 21 at 3.

On September 18, 2025, Mr. Chiliquinga Yumbillo filed a federal habeas petition pursuant to 28 U.S.C. § 2241 challenging his detention. ECF No. 1 at 4. The petition requested a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a). ECF No. 1 at 4. In addition to his verified petition, Mr. Chiliquinga Yumbillo filed a motion for a temporary restraining order ("TRO") to prevent his transfer from the District of Maine during the pendency of his habeas proceedings. ECF No. 3. This Court granted the TRO on September 19, 2025, enjoining the Government from relocating Mr. Chiliquinga Yumbillo outside the District of Maine absent judicial approval.[3]  ECF No. 6. On the same day, the Court issued an order directing the Government to show cause within three days why Mr. Chiliquinga Yumbillo's petition for a writ of habeas corpus should not be granted. ECF No. 5. The Government subsequently moved without opposition to extend its response time to September 24, 2025, ECF No. 9, which the Court granted, ECF No. 12. The Government filed its response to the show cause order on September 24, 2025, ECF No. 21, and Mr. Chiliquinga Yumbillo replied two days later, ECF No. 24. The Court held a hearing on Mr. Chiliquinga Yumbillo's petition on September 29, 2025. At the hearing's conclusion, the Court issued an oral order granting Mr. Chiliquinga Yumbillo's petition and noted that a written opinion would follow. ECF No. 26.

Mr. Chiliquinga Yumbillo has been detained since his arrest and currently is housed at the Plymouth County Correctional Facility in Plymouth, Massachusetts. ECF No. 18.

---

[3] The Court subsequently approved Mr. Chiliquinga Yumbillo's transfer from Maine to the Plymouth County Correctional Facility in Massachusetts. ECF No. 19.

## B. Parties' Arguments

Under 8 U.S.C. § 1225(b)(2), otherwise referred to as the "mandatory detention statute," a noncitizen "who is an applicant for admission" shall be detained for a removal proceeding "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). In contrast, under 8 U.S.C. § 1226, the "discretionary detention statute," a noncitizen subject to detention is entitled to procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination. *See* 8 C.F.R. § 236.1 (2025) (enumerating the procedural protections). Mr. Chiliquinga Yumbillo argues he is being deprived of his rights under the Constitution's due process clause because he is unable to seek a bond hearing to which he is entitled under section 1226(a). ECF No. 24 at 1–2; *see* U.S. Const. amend. V. His argument is predicated on his contention that he is inappropriately classified as mandatorily detained under section 1225(b)(2), when he should be discretionarily detained under section 1226(a).

The Government, in turn, maintains that section 1225(b)(2) applies to "applicants for admission," who are defined as "[noncitizens] present in the United States who [have] not been admitted" or "who arrive[] in the United States." ECF No. 21 at 5 (citing 8 U.S.C. § 1225(a)(1)). Under the Government's reading of section 1225(b)(2), all noncitizens who are in the country and who have not been otherwise admitted or paroled are considered "applicants for admission" and thus subject to mandatory detention. Because Mr. Chiliquinga Yumbillo entered the country uninspected—that is, without being admitted or paroled—the Government classifies him as being in the process of "seeking admission." *Id.* at 6. Per the Government's argument, there is no due process violation because—

4

despite being mandatorily detained—Mr. Chiliquinga Yumbillo would still be entitled to be heard on the merits of his removal proceedings, although he could not be heard on his right to release. *See* 8 U.S.C. § 1225(b)(2) ("[I]n the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a of this title."); 8 U.S.C. § 1229a (providing the procedure for removal proceedings). In the alternative, the Government argues that even if section 1226(a) were to apply to Petitioner, the Attorney General reserves the right to discretionarily detain him under that statutory provision. ECF No. 21 at 9–11; *see* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States.").

## II.     Jurisdiction & Administrative Exhaustion

My analysis begins by finding this Court has jurisdiction over the matter. Although the Immigration and Nationality Act ("INA") strips federal courts of jurisdiction to review the merits of removal decisions pending a final administrative order,[4] "district courts retain jurisdiction over challenges to the legality of detention in the immigration context." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007). Likewise, noncitizens can raise "constitutional challenges regarding the availability of bail" in court. *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)). Here, Mr. Chiliquinga Yumbillo's habeas claim is based on the legality and constitutionality of his detention, allowing the Court to exercise jurisdiction over the

---

[4] *See* 8 U.S.C. § 1252(b)(9) ("[N]o court shall have jurisdiction, by habeas corpus . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.").

matter. *See, e.g.*, *Chogllo Chafla v. Scott*, No. 2:25-CV-00437, 2025 WL 2688541, at *4 (D. Me. Sept. 21, 2025).

The Government suggests in passing that Mr. Chiliquinga Yumbillo must first exhaust available administrative remedies before seeking relief from the Court. ECF No. 21 at 2. In general, "a plaintiff's failure to exhaust [his] administrative remedies precludes [him] from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). Here, the Government contends that Petitioner has not adequately exhausted the available administrative remedies, which would preclude this Court from hearing his claims. ECF No. 21 at 2. It is undisputed that Mr. Chiliquinga Yumbillo has not been heard before an Immigration Judge on the issue of his release; hence, he has not been able to appeal his custody determination. *See* 8 C.F.R. § 236.1(d) (describing the process for "[a]ppeals from custody decisions").

There are two types of exhaustion: statutory and common-law. *See Brito*, 22 F.4th at 255. "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Id.* (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). In this case, Mr. Chiliquinga Yumbillo does not challenge the decision of an Immigration Judge on conditions of release—indeed, he is incapable of doing so because of the Government's characterization of his detention as being mandatory under section 1225(b)(2), ECF No. 21 at 5, and the Board of Immigration Appeals' ("BIA") recent precedential opinion foreclosing Immigration Judges from applying section 1226(a) to noncitizens detained under section 1225(b)(2), *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Because exhaustion is not required by statute in this particular context, the Court must

6

weigh the Government's argument against the "more permissive" common-law exhaustion standard. *Brito*, 22 F.4th at 256; *see dos Santos v. Noem*, No. 1:25-CV-12052, 2025 WL 2370988, at *5 (D. Mass. Aug. 14, 2025) (conducting a common-law analysis of noncitizen's claim that he was unlawfully detained under section 1225(b)(2)); *Orellana Juarez v. Moniz*, No. 25-CV-11266, 2025 WL 1698600, at *3 (D. Mass. June 11, 2025) (same).

The "twin purposes" of the common-law exhaustion doctrine serve to "protect[] administrative agency authority and promot[e] judicial efficiency." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145, 146 (1992)). However, contrary to the Government's argument, where, as here, the petitioner may suffer "irreparable harm," exhaustion requirements may be excused. *Id*. Such irreparable harm "may be established where a petitioner will be incarcerated or detained pending the exhaustion of administrative remedies." *dos Santos*, 2025 WL 2370988, at *5; *see Brito*, 22 F.4th at 256 ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest." (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)) (alterations in *Brito*)). Mr. Chiliquinga Yumbillo is facing a potentially indefinite period of unlawful detention if he is denied access to a bond hearing while his removal proceedings are pending. This risk is exacerbated by the fact that the Government intends to invoke the administrative stay provision in 8 C.F.R. § 1003.19(i)(2) (2025) even if he is granted a bond hearing under section 1226(a).[5] *See* ECF No. 21 at 10 n.5. And "[a]ccording

---

[5] 8 C.F.R. § 1003.19(i)(2) provides, in relevant part, that if the government "determine[s] that a[] [noncitizen] should not be released . . . , any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon [the government's] filing of a notice of intent to appeal the custody redetermination . . . with the immigration court within one business day of the order." Other courts in this

to data released by the Executive Office for Immigration Review, the average processing time for bond appeals exceeded 200 days in 2024." *Sampiao v. Hyde*, No. 1:25-CV-11981, 2025 WL 2607924, at *6 (D. Mass. Sept. 9, 2025) (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248 (W.D. Wash. 2025)). By any measure, Mr. Chiliquinga Yumbillo is likely to endure many months of potentially unlawful detention.

In *Bermeo Sicha v. Bernal*, No. 1:25-CV-00418, 2025 WL 2494530, at *5 (D. Me. Aug. 29, 2025), this Court weighed whether common-law exhaustion principles should require a similarly situated petitioner to exhaust the administrative process before seeking relief in federal court. The Court determined "[t]he administrative agency has no particular expertise in resolving constitutional questions" and thus there was "no . . . reason to require administrative exhaustion for [petitioner's] due process claims." *Id*. Here, too, the Court's finds that seeking relief within the administrative apparatus would not serve to resolve Mr. Chiliquinga Yumbillo's due process claims that section 1226(a)—rather than section 1225(b)(2)—applies to his detention. Waiver of the exhaustion requirement is therefore warranted because the Petitioner is likely to experience irreparable harm if he is precluded from seeking habeas relief as to his release.

### III.     Merits

#### A. Applicability of 8 U.S.C. § 1226

Because Mr. Chiliquinga Yumbillo has been continuously present in the country for more than two years,[6] the permissive detention structure of section 1226(a) should

---

Circuit have determined the invocation of the automatic stay provision *after* an Immigration Judge has granted a petitioner's release on bond constitutes an erroneous deprivation of the petitioner's liberty interests. *Sampiao v. Hyde*, No. 1:25-CV-11981, 2025 WL 2607924, at *10–12 (D. Mass. Sept. 9, 2025).

[6] 8 U.S.C. § 1225(b)(1)(II) applies to noncitizens who have *not* been in the country "continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," and mandates their expedited removal from the country without an opportunity to be heard.

govern his detention—not section 1225(b)(2)'s mandatory detention. Both parties stipulated at the September 29, 2025, oral argument that Mr. Chiliquinga Yumbillo is identically situated in all relevant respects to the petitioners in *Chogllo Chafla*, 2025 WL 2688541. Thus, as I have already decided the issue, my previous analysis is controlling.

For the same reasons as I have explained in detail in *Chogllo Chafla*, the plain language of the statute, the legislative history, and traditional canons of statutory interpretation each indicate that section 1226(a) applies to noncitizens like the Petitioner who have been in the country continuously for more than two years. *Id.* at *5–9; *see also id.* at *5 (collecting cases holding the same). As such, it is unlawful for the Government to continue to detain him subject to section 1225(b)(2). *See id.* at *9 ("For these reasons, I conclude section 1225(b) does not apply to the Petitioners' detention, and they may be subject to detention only as a matter of discretion pursuant to section 1226(a).").

### B. Due Process

Because Mr. Chiliquinga Yumbillo is being detained unlawfully pursuant to section 1225(b)(2), his continued detention absent a bond hearing before an Immigration Judge violates his constitutional due process rights. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation modified)); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–28 (1st Cir. 2021) (applying *Mathews* to a noncitizen's detention under section 1226(a)); *Chogllo Chafla*, 2025 WL 2688541, at *9–11 (applying the *Mathews* factors and finding that continued detention absent procedural safeguards violates due process); *Bermeo Sicha*, 2025 WL 2494530, at *5–6 (collecting cases requiring a bond re-determination hearing before revocation if petitioner is re-detained).

To determine whether the Petitioner's due process rights have been violated, I must weigh the three *Mathews* factors, which are as follows: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. For the same reasons as I have enumerated in detail in previous cases, the Petitioner faces a substantial risk of erroneous deprivation of his private liberty interest, which mitigates against the Government's interest in his continued detention without a bond hearing. *See Chogllo Chafla*, 2025 WL 2688541, at *9–11; *Bermeo Sicha*, 2025 WL 2494530, at *5–6. In sum, all three *Mathews* factors weigh in favor of this Court's conclusion that Mr. Chiliquinga Yumbillo's due process rights have been violated by the Government's continued detention of him pursuant to section 1225(b)(2).

## C. Warrant

The Government established at oral argument that the Petitioner was arrested by CBP without a warrant. As this Court has previously held, the plain language of section 1226(a)—which the Court finds is the proper framework for this action—requires a warrant for arrest and detention and, therefore, "absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Chogllo Chafla*, 2025 WL 2688541, at *11 (citing 8 U.S.C. § 1226(a)) (emphasis in original). Because the Government failed to obtain a warrant as required by the statute for detention, *see* 8 U.S.C. § 1226(a) ("*On a warrant issued by the Attorney General*, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States."

(emphasis added)), Petitioner may not be detained and must be released, *see Chogllo Chafla*, 2025 WL 2688541at *11–12 (immediately releasing petitioners arrested without a warrant until they received individual bond hearings).

### IV.     Conclusion

Accordingly, I **GRANT** the Petitioner's habeas petition and order that he be released from detention until he receives an individual bond hearing pursuant to section 1226(a). ECF No. 1. The Government is enjoined from denying Petitioner a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to Petitioner and the Government shall provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of this order. The Government is further **ORDERED** to file a status report within five days of Petitioner's bond hearing, stating whether the Petitioner has been granted bond, and, if his request for bond was denied, the reasons for that denial.

**SO ORDERED.**

Dated this 30th day of September, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**